# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENS ERIK SORENSEN, as Trustee of SORENSEN RESEARCH AND DEVELOPMENT TRUST,<br><br>Plaintiff,<br><br>vs.<br><br>THE BLACK AND DECKER CORPORATION, et al.<br><br>Defendants. | CASE NO. 06cv1572 BTM (CAB)<br><br>ORDER:<br><br>(1) DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION OF DENIAL OF OBJECTIONS TO MAGISTRATE JUDGE'S ORDER OF APRIL 9, 2007 AS MOOT [Doc. #163];<br><br>(2) GRANTING DEFENDANTS' MOTION FOR RECONSIDERATION OF THE COURT'S JUNE 20, 2007 ORDER RE BIFURCATION [Doc. #171];<br><br>(3) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO STAY [Doc. #178];<br><br>and<br><br>(4) DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS PREMATURE [Doc. #204] |

**I.   Motion for Reconsideration of Denial of Objections to Magistrate Judge's Order**

On April 9, 2007, Magistrate Judge Bencivengo issued an order in which she granted in part and denied in part Plaintiff's motion to compel further responses to discovery. In accordance with 28 U.S.C. § 636(b)(1)(A) and Fed. R. Civ. P. 72(a), Plaintiff filed an

objection to that ruling, arguing that it was both clearly erroneous and contrary to law. In an order entered June 14, 2007, the Court overruled Plaintiff's objection without prejudice. The Court found that the Magistrate Judge's determinations regarding the Black & Decker Defendants' waiver of the attorney-client privilege, and the applicability of Patent Local Rule 2.5(d), were neither clearly erroneous nor contrary to law, on the record before the Court. However, the Court was unable to determine at that time whether, and to what extent, the Black & Decker Defendants ("B&D") intended to rely upon the death of Dennis Dearing to provide the requisite showing of prejudice in support of any laches and/or equitable estoppel defenses. Therefore, Plaintiff was granted leave to serve an interrogatory upon B&D, which stated: "Set forth, in detail, all prejudice to Defendants that resulted from the death of Dennis Dearing in regard to this case." To the extent Plaintiff believed that B&D's response to the interrogatory indicated that this Court's determination regarding waiver of the attorney-client privilege was in error, it was invited to move for reconsideration of the decision at that time.

On July 11, 2007, B&D responded to Plaintiff's interrogatory setting forth the prejudice that resulted from the death of its former in-house counsel Dennis Dearing. The prejudice identified included the inability to have Mr. Dearing testify regarding his communications in the mid-1990s pertaining to Mr. Jens Ole Sorensen's claims of infringement of the '184 Patent. These communications included discussions directly with Mr. Sorensen and his representatives, as well as with John Schiech, Black & Decker's business manager responsible for making all decisions concerning the matter. B&D also indicated that it was prejudiced because it could not present Mr. Dearing as a witness to defend against Plaintiff's charge of willful infringement.

On July 12, 2007, Plaintiff filed the present motion to reconsider this Court's previous ruling on the basis of the new evidence presented in B&D's interrogatory response. The motion was calendared for hearing, without oral argument, on August 10, 2007. However, while the motion was pending, Magistrate Judge Bencivengo reconsidered her earlier ruling in light of B&D's interrogatory response. On August 3, 2007, Judge Bencivengo issued her "Order Following Discovery Conference on July 26, 2007" in which she ruled:

> Since the defendant is affirmatively relying upon the death of Mr. Dearing to support its defense of laches, the plaintiff is entitled to review Mr. Dearing's files that still exist and reflect his personal thoughts and impressions, so plaintiff may respond to defendant's claim of lost evidence. Defendant was therefore ordered to produce any withheld documents reflecting Mr. Dearing's work product on this matter.

[Doc. #177 at ¶ 8.] Judge Bencivengo stayed production of Mr. Dearing's work product for 30 days in order to give B&D an opportunity to appeal the order. B&D has just taken that opportunity and filed a motion for reconsideration on September 4, 2007 [Doc. #240]. B&D's motion is calendared for hearing by this Court on November 2, 2007.

In light of Judge Bencivengo's more recent order requiring production of Mr. Dearing's privileged documents, and the now-pending motion for reconsideration of that order, the Court finds moot Plaintiff's motion for reconsideration of its previous order overruling Plaintiff's objection to Judge Bencivengo's April 9, 2007 order. The Court finds that this entire issue will be addressed, upon a complete and updated record that includes Judge Bencivengo's August 3, 2007 order, in the Court's forthcoming decision on B&D's pending motion for reconsideration. Accordingly, Plaintiff's motion is **DENIED** without prejudice as moot.

## II. Motion for Reconsideration of Bifurcation

On June 13, 2007, the Court held a hearing on B&D's motion for summary judgment of laches. The Court denied B&D's motion at that hearing and discussion then ensued over the possibility of setting an expedited bench trial on B&D's equitable defenses of laches and estoppel. At B&D's urging, the Court and the parties agreed to schedule this bench trial beginning on December 17, 2007. In a June 20, 2007 written order confirming the Court's decision from the June 13 hearing, the Court explained that the trial of equitable defenses could be bifurcated from the rest of the trial proceedings relating to infringement. [Doc. #147 at 2-3.] Citing the Ninth Circuit case of Danjaq LLC v. Sony Corp., 263 F.3d 942 (9th Cir. 2001), the Court explained that, in deciding these equitable defenses, it would need to determine whether there has been any showing of willful infringement on the part of

1  Defendants that would act as a "counterdefense" to laches. The Court invited any party to
2  make a motion for reconsideration of the decision to bifurcate the equitable portion of the trial
3  if they felt that the Court's determination of the willfulness issue presented a problem for any
4  subsequent jury trial proceedings.
5      On July 20, 2007, B&D accepted the Court's invitation and filed a motion for
6  reconsideration of bifurcation. [Doc. #171.] B&D explained that it had not appreciated that
7  the Court itself would need to make a finding on willfulness, without the aid of a jury, in any
8  bifurcated trial on equitable defenses. In light of this realization, and its desire to retain its
9  full rights to a jury determination on willfulness, B&D withdrew its request for an expedited
10 bench trial on its equitable defenses.
11     Plaintiff has opposed B&D's motion for reconsideration arguing that there is no
12 authority establishing any right to a jury trial on willfulness and, to the extent such a right
13 exists, B&D has waived its rights by continually requesting that the Court schedule a short
14 bench trial on laches before proceeding with the rest of the action.
15     The Court finds that the right to a jury trial on willfulness exists in a patent action that
16 will be tried to a jury. See, e.g., Richardson v. Suzuki Motor Co., 886 F.2d 1226, 1250 (Fed.
17 Cir. 1989). Having considered the submissions of the parties and the record of these
18 proceedings, the Court does not find that B&D has knowingly waived its right to a jury trial
19 on willfulness. Moreover, the early bifurcated trial on equitable defenses was scheduled by
20 this Court in an effort to accommodate B&D's request for an early determination of laches,
21 which it argued, if found, would greatly expedite the conclusion of this matter. Having
22 recognized that a laches determination requires that this Court determine, before any jury
23 has considered the question, whether Defendants willfully infringed Plaintiff's patent, B&D
24 has withdrawn its request. The Court sees no reason to push ahead with a bifurcated trial
25 despite B&D's express wishes.
26     The Court's recognition of the practical ramifications of the intertwinement of
27 willfulness in any laches determination was the impetus for the Court's invitation to
28 reconsider in its June 20, 2007 order. Having considered B&D's submission, which was

based upon the exact issues identified in this Court's own order, the Court hereby **GRANTS** B&D's motion. The bifurcated bench trial on equitable defenses previously scheduled for December 17, 2007 is hereby **VACATED**, along with all pretrial proceedings associated with it, including the November 26, 2007 pretrial conference.

### III.   Motion to Stay Litigation Pending Reexamination

On August 3, 2007, all Defendants jointly filed a motion for a stay of these proceedings. Defendants' motion is based on B&D's pending request for reexamination of Plaintiff's '184 Patent, which was filed with the U.S. Patent and Trademark Office ("PTO") on July 30, 2007. The request for reexamination challenges, *inter alia*, all 5 claims of the '184 Patent that are asserted in the present litigation. The challenge is based on a number of prior art references, almost all of which were apparently not considered by the PTO in the prosecution of the '184 Patent.

Courts have inherent power to stay an action pending conclusion of PTO reexamination proceedings. Ethicon, Inc. v. Quigg, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988). The decision whether to grant or deny a motion to stay proceedings pending PTO reexamination rests within the sound discretion of the court. See, e.g., Photoflex Products, Inc. v. Circa 3 LLC, No. C 04-03715 JSW, 2006 U.S. Dist. LEXIS 37743, at *2-3 (N.D. Cal. May 24, 2006). There is a "liberal policy" in favor of granting motions to stay pending the outcome of PTO reexamination proceedings. ASCII Corp. v. STD Entertainment USA, Inc., 844 F. Supp. 1378, 1381 (N.D. Cal. 1994).

In determining whether to stay litigation pending reexamination by the PTO, courts generally consider the following factors: (1) the stage of litigation, i.e., whether discovery is almost complete and whether a trial date has been set; (2) whether a stay would cause undue prejudice or present a clear disadvantage to the non-moving party; and (3) whether a stay will simplify the issues in question and trial of the case. See, e.g., Xerox Corp. v. 3Com Corp., 69 F. Supp. 2d 404, 406 (W.D.N.Y. 1999).

The Court finds that this litigation has not proceeded so far that it would be unjust to

stay the action. Although this action was originally filed about a year ago, and the Court recognizes that substantial amounts of discovery have already occurred, the more relevant inquiry is whether discovery is nearing completion – it is not.[1] For instance, Magistrate Judge Bencivengo recently granted the parties permission to take an additional 10 depositions per side. [See Doc. #159 at 2.] No deadline for the completion of fact discovery has even been set. Moreover, the parties are just beginning to brief the preliminary issue of claim construction and, in accordance with the decision above to vacate the bifurcated bench trial on equitable defenses, no trial date is currently set for any aspect of this case. In addition, while the Court has already considered two motions for summary judgment, it previously put off consideration of two others until after claim construction, and Plaintiff has just filed a substantial summary judgment motion aimed at piercing Black & Decker's corporate veil. The Court anticipates that further summary judgment motions regarding infringement and patent validity will be filed once claim construction is complete. Thus, a substantial amount of resources will be employed by all parties and the Court even in advance of any eventual trial. See, e.g., Broadcast Innovation, L.L.C. v. Charter Communications, Inc., No. 03-cv-2223-ABJ-BNB, 2006 U.S. Dist. LEXIS 46623, at *26-31 (D. Colo. July 11, 2006) (granting stay, in part, because of significant work remaining on motions for summary judgement, even though trial date was less than three months away).

Plaintiff claims Defendants delayed filing their request for reexamination to gain a tactical advantage over it. He claims that Defendants were aware of the prior art that they reference in their reexamination request over seven months ago, but purposely delayed so that the '184 Patent would expire during the reexamination process, thereby precluding Plaintiff from offering any amendments to the claims. Defendants respond that there was no intentional delay and that their decision to request reexamination was based, in part, on the Supreme Court decision in KSR International Co. v. Teleflex Inc., 127 S. Ct. 1727 (2007), which was only issued at the end of April. The Court is not convinced that Defendants

---

[1] In reaching this determination, the Court has considered the surreply submitted by Plaintiff and, therefore, the pending ex parte request to file a surreply [Doc. #201] is **GRANTED**.

employed any improper tactics in filing their request for reexamination. While Plaintiff is rightfully concerned that a reexamination in the twilight of his patent puts him at a distinct disadvantage, he could have prevented this situation by filing suit many years ago, thereby allowing sufficient time for any reexamination to occur before the patent expired.

Therefore, Plaintiff's cognizable claims of prejudice if a stay should be entered basically boil down to his inconvenience in delaying final collection of any monetary award of royalties, assuming he ultimately wins. However, as the court recognized in <u>Broadcast</u>, the prejudice factor "is best summarized by one question: *do the Plaintiffs have an adequate remedy at law?*" 2006 U.S. Dist. LEXIS 46623, at *32. Just as in <u>Broadcast</u>, the answer here is that clearly Plaintiff does have an adequate remedy. Defendants point out, and Plaintiff has not disputed, that the '184 Patent will expire in February 2008 independent of reexamination. Given that a trial on the merits could not occur prior to that date, Plaintiff would not have been granted any injunctive relief by this Court. Therefore, his claim would be restricted to past monetary damages, which, with the addition of prejudgment interest, are fully capable of compensating Plaintiff. Unfortunately, reexamination can be a drawn out process, resulting in a significant delay in court proceedings. Protracted delay is always a risk inherent in granting a stay, yet courts continue to stay actions pending reexamination. The general prejudice of having to wait for resolution is not a persuasive reason to deny the motion for stay. An average delay for reexamination of approximately 18-23 months is especially inconsequential where Plaintiff himself waited as many as twelve years before bringing the present litigation. (<u>See</u> PTO Reexamination Statistics at Ex. B to Niro Decl.; Doc. #180-3.)

In addition, the Federal Circuit has recently confirmed that the PTO would not be bound in its reexamination by the determinations of this Court. <u>In re Trans Texas Holdings Corp.</u>, 2006-1599 and 2006-1600, 2007 U.S. App. LEXIS 19909, at *14-19 (Fed. Cir. Aug. 22, 2007). Because of this, the Court finds that not only is Plaintiff unlikely to be prejudiced in these proceedings by a stay pending the PTO reexamination, but Defendants would potentially be prejudiced by *failing* to enter a stay. One court has explained this possibility

accordingly:

> Not only could the Court and the PTO reach conflicting determinations, but one possible scenario could result in irreparable harm to [Defendant]: if this Court finds that the [patent] is not invalid and that [Defendant] has infringed it, and orders [Defendant] to pay damages to [Plaintiff] for such infringement, then [Defendant] would have no ability to recover those damages if at a later date the PTO determined that the [] patent is invalid.

Bausch & Lomb, Inc. v. Alcon Lab., Inc., 914 F. Supp. 951, 952 (W.D.N.Y. 1996). The Court finds such a possibility to be, at a minimum, a highly undesirable outcome.

Finally, the Court finds that the stay will result in the simplification of issues in this case. As explained by the Federal Circuit, "[o]ne purpose of the reexamination procedure is to eliminate trial of [the issue of patent claim validity] (when the claim is canceled) or to facilitate trial of that issue by providing the district court with the expert view of the PTO (when a claim survives the reexamination proceeding)." Gould v. Control Laser Corp., 705 F.2d 1340, 1342 (Fed. Cir. 1983), cert. denied, 464 U.S. 935 (1983). The Broadcast court, elaborating on this point, explained:

> Shifting the patent validity issue to the PTO has many advantages, including:
>
> 1. All prior art presented to the Court will have been first considered by the PTO, with its particular expertise.
>
> 2. Many discovery problems relating to prior art can be alleviated by the PTO examination.
>
> 3. In those cases resulting in effective invalidity of the patent, the suit will likely be dismissed.
>
> 4. The outcome of the reexamination may encourage a settlement without the further use of the Court.
>
> 5. The record of reexamination would likely be entered at trial, thereby reducing the complexity and length of the litigation.
>
> 6. Issues, defenses, and evidence will be more easily limited in final pretrial conferences after a reexamination.
>
> 7. The cost will likely be reduced both for the parties and the Court.

2006 U.S. Dist. LEXIS 46623, at *9-10 (quoting Emhart Indus., Inc. v. Sankyo Seiki Mfg. Co., 3 U.S.P.Q.2d 1889, 1890 (N.D. Ill. 1987)).

The Court believes that it will benefit from the PTO's evaluation of how the previously

unconsidered prior art references impact the claims of the patent-in-suit. The PTO's expert evaluation is likely to be of assistance not only as to the issues of validity, but its understanding of the claims is also likely to aid this Court in the preliminary process of claim construction.

The Court finds that, especially in this case, the reexamination process has the potential to significantly narrow the issues for trial because of the impending expiration of the '184 Patent. While the parties have argued at length about exactly how this additional variable affects the calculation of the likely outcome of reexamination, the Court need not resolve this dispute to reach the proper conclusion. It is enough to note that when reexamination is requested by a third party, as in this case, all claims are confirmed only 29% of the time. (See PTO Reexamination Statistics at Ex. B to Niro Decl.; Doc. #180-3.) Since no amendments can be offered to an expired patent, there is obviously a significant likelihood that the validity of the claims at issue in this action will be affected by the reexamination process.[2]

In addition, the Court expects that the reexamination process will not only aid the Court in these proceedings, but should also redound to the benefit of the parties, both Defendants and Plaintiff. As the Broadcast court explained in its discussion of the possibility of prejudice from entering a stay:

> If the PTO does not invalidate or otherwise alter the claims of the [] patent, the Plaintiffs' legal remedy remains unaffected . . . . Moreover, if the claims are narrowed, both sets of parties will have benefitted by avoiding the needless waste of resources before this Court, and again, the Plaintiffs will be able to pursue their claim for money damages at trial. Finally, if the claims are strengthened, the Plaintiffs' position will be as well, and their likelihood of monetary damages will increase. See, e.g., Motson, 2005 U.S. Dist. LEXIS, 2005 WL 3465664 at *1 ("[I]f the PTO upholds the validity of plaintiff's patent, 'the plaintiff's rights will only be strengthened, as the challenger's burden of proof becomes more difficult to sustain.'") (quoting Pegasus Dev. Corp., 2003 U.S. Dist. LEXIS 8052, 2003 WL 21105073 at *2).

---

[2] Plaintiff has argued that the PTO is unlikely to grant reexamination precisely because the '184 Patent will expire soon. However, Plaintiff failed to produce any evidence to support this contention. Moreover, even if Plaintiff is correct, and the PTO fails to grant reexamination (a decision which should issue no later than October 30, 2007), this Court would immediately lift the stay and these proceedings would continue – a relatively insignificant 2-month delay being all that would result.

2006 U.S. Dist. LEXIS 46623, at *32-33.  Accordingly, the Court finds that a stay is appropriate to avoid the risk of unnecessary litigation and to permit the clarification of issues before this Court.

Therefore, Defendants' motion to stay this litigation is **GRANTED IN PART** and **DENIED IN PART**.  With the exception of two pending motions, all proceedings are hereby stayed pending the PTO's reexamination of the '184 Patent.  The Court will continue to hear Plaintiff's pending motion for entry of default against Defendant Porter-Cable Corporation [Doc. #182], which is calendared for hearing on October 12, 2007.  As was discussed above in Section I, the Court will also continue to hear B&D's pending motion for reconsideration of Magistrate Judge Bencivengo's August 3, 2007 order regarding production of Dennis Dearing's attorney work product [Doc. #240], which is calendared for hearing on November 2, 2007.  The Clerk is directed to **VACATE** all scheduled discovery hearings, as well as the claim construction hearing previously set for November 19, 2007.  All hearing dates will be reset, to the extent appropriate, once the stay of these proceedings has been lifted.

Defendants are ordered to file a notice informing the Court of the PTO's decision on the pending application for reexamination within 10 days of receipt of such decision.  If the PTO declines B&D's request to reexamine the '184 Patent, the Court will immediately lift the stay and recalendar all vacated hearing dates.  If, however, the PTO approves reexamination, this stay will remain in place pending some resolution of those proceedings.  During the pendency of the reexamination, Defendants will be required to file a notice every 6 months apprising the Court of any change in the status of those proceedings.

### IV.    Motion for Partial Summary Judgment

On August 30, 2007, Plaintiff filed a motion for partial summary judgment piercing the corporate veils of the Black & Decker Defendants, or in the alternative, holding them to be a single enterprise for purposes of patent infringement liability. [Doc. #204.]  The motion is presently calendared for hearing on October 26, 2007.  In light of the Court's entry of a stay of these proceedings pending the PTO patent reexamination, the Court finds Plaintiff's

1 | motion to be premature. Accordingly, the Court hereby **DENIES** Plaintiff's motion without
2 | prejudice.[3] As the Court is aware of the substantial volume of Plaintiff's motion, he is invited
3 | to refile this motion once the stay has been lifted by simply filing a short notice of motion
4 | which incorporates by reference his earlier filing.

6 | **IT IS SO ORDERED.**

8 | DATED:  September 10, 2007

*[signature]*
Honorable Barry Ted Moskowitz
United States District Judge

---

[3] Plaintiff's pending motion to file confidential documents under seal in support of the motion for partial summary judgment [Doc. #204-5] is also **DENIED** as moot.

Exhibit 1
11
Page 11   06cv1572